Thank you, Your Honor. I would like to reserve four minutes for rebuttal. This case raises a number of similar issues because, quite frankly, it involves similar claims against different defendants. Something I'd like to point out with respect to the record being sealed is that the record before this court includes all of the documents that are in the district court record, and this court has an independent interest in ensuring public access to its own records, which now include the district court's records. So even if I had not filed at the appropriate time to seek a review of the district court's order sealing in these cases, the fact that the Ninth Circuit's record includes documents that are in the district court record across the board gives this court the ability, sua sponte, to unseal those documents as part of its obligation to keep its records public. And if you want me to file a motion asking him for that, I'd be happy to do so. I'm wrong in my gut sense that the volume of sealing is less in this case than in the other case. The volume of sealing in this case is a lot less, no doubt about it. But the sealing in this case is designed to obscure the number of contracts involved and the amount of damages that are at stake in the case. Basically... Counsel, can you explain to me why unsealing that information would benefit the public at large? Like, what specifically would be beneficial to the public? I think it's beneficial to the public to know anytime that there are judicial proceedings that are being settled, particularly in a class action, which involves all kinds of conflicts of interest, typically, to know what the basic underlying facts are. So is there any situation where sealing would be acceptable, in your mind, in a situation like this where it's a class action? There are going to be situations where there's private medical data of people. I have no doubt that there are going to be cases where there's private, you know, information that needs... But commercially sensitive information that competitors could use or... Trade secrets. Yeah, there may be cases where they're trade secrets. But here the allegation is that they need to protect from competitors' ability to discover the amount that they're charging for these allegedly illegal charges. So you've got a case being filed saying these charges are illegal. They're against the law in an important regulated industry. And it settles keeping the charges and the amount of the charges a secret. With now the court putting a stamp of approval on the alleged violation of the law. That can't be right. And for class members or the public to evaluate the propriety of a settlement, you need to have some idea of what were the total amount of damages. If a case settles for $20 million, what are the potential damages? Are they $200 million? But class members had access to that. Pardon? But class members had access to that with the protective order. Class members had access to that with a protective order if they signed a protective order that would prohibit them from discussing that. Yes, but counsel made the point that if you'd signed the protective order and gotten access to the information, you could have then made a further motion to unseal it because you would have had access to the detail and said, well, now that I've seen it, you really need to blue pencil this a lot more with a lot more granularity. It would have made me a participant in the sealing- But then you staked out an all or nothing position. Then no conditions, no protective order, and so it seems that if there's any valid information that's sealed, then maybe you don't have any objection beyond that. Well, this isn't a case where the defendant is Boeing or Lockheed Martin, and there is subject to protection. This is a case- How companies calculate and determine what prices to charge is information that can be useful to competitors. Pricing information of competitors is of value. Well, here the pricing information is information about prices that the element of the pricing that is allegedly illegal. And it makes no sense to file an action that says this is illegal. These are illegal charges. It's illegal not to disclose the amount of the charges and then to agree to a settlement that keeps the amount of the charges sealed, withheld from the public, unreviewable by members of the class, unless they sign a protective order that I think violates the First Amendment. It just doesn't make sense. Did you, same question that Judge Collins had for you in the earlier case, shouldn't you have objected and given the district court a little more chance to address the concerns you raised before us on the predominance issues? In retrospect, I would have liked to. But what was stopping you from doing that when you had a- Because once again, I am looking at a preliminary approval order, which has a cursory preliminary review of class certification issues. And as the Sixth Circuit points out in the Wayside Church case, those orders typically don't engage in any rigorous analysis. They're not required to. It's just, OK, we'll come back to this later. And I don't think that by objecting to- I don't think that the fact that it didn't include the fulsome analysis that's required by law, that class members like me are in notice that the court has no intention of performing that analysis. It's required to perform that analysis. It's an independent duty, whether or not I objected. And this court recognizes that class members don't have to be oracles. They don't have to see the future. If the district court violates the law governing class action procedure, they can, you know, file an appeal from that. And in one of the cases, it was the Apple device performance case, an issue could be raised as late as on a reply brief. So on the- we do- it seems like on this record, we have a little bit more to work with. I think one of the parties in their reply brief on the- one of the motions did explore the Washington, California question that you raise. And I think in this order, the district court referenced that, the submissions of the parties. Why is that not enough? Well, I think it was still very cursory. And I don't think it recognizes the fact that under California law- But what was cursory? So if the district court, for example, incorporated by reference the analysis here, would that be enough? Incorporated the two-page analysis of- in the briefs, would that be enough? I don't recall that the district court incorporated that by reference, Your Honor. Well, we're trying to draw a line here. In terms of what we don't want to do is just come up with kind of a make work for the district court to come through and say, well, I agree with the party's submissions on this, or I've asked the parties about it. They've satisfied me with it. And then just require an extra step of them, the district court, putting the transcript verbatim into their order. I mean, in other words, I think the point is how much has to be there to evidence a rigorous analysis if the district court thinks that the settling parties have done so. I think the district court could say I'm adopting a specific explanation, but I don't think the explanation was that specific or that full. And I think that it's very important that the California law claims are claims where you get restitution. That would be the full amount of the transactions that are refunded, whereas under the Washington law claims, you only get damages and there's a requirement to show an injury to business or property. Well, I guess that goes to there are kind of two things going on. There's the procedural objection, which seems to be something we've cared about in the past in terms of seeing the court and the Supreme Court has told us of seeing a rigorous analysis there. There's a separate question then, which I think by and large is more an abuse of discretion standard of whether that analysis, whether we would agree with that analysis or not. But I think I take your issue to be the first kind, that there's just not a rigorous analysis here. I think that's correct, that there's not a rigorous analysis here. And I think that the California claims are ones where the relief is restitutionary, that's more than damages, where the Washington law claims require proof of an injury to business or property. That sounds like antitrust law, which is a significant barrier to recovery. And you've got the fact that these are claims that many states don't recognize their validity, that the plaintiffs are saying that there's great risks in this case because there's so little... Well, these issues are pervasive in nationwide or multi-state class actions, and the district court often makes the call there. And of course, the plaintiffs often raise the question about the different claims. But that's pervasive. I mean, if we were to have... If we're convinced that the district court had done that analysis on the merits, how could we assign error to a slightly different view of all things considered, whether it's a good settlement? Well, there are multi-state claims where the claims are really similar, and there are multi-state claims where it looks like they're potentially very different. And this is a case, I think, where the plaintiffs are saying a lot of states don't recognize these claims at all. They will acknowledge that a district court throughout Florida law claims that are very similar to these. They say it's difficult and it's unpredictable. And they give no basis for assuming that California courts and Washington courts are likely to reach the same results. None. And without some indication that California law and Washington law really are the same, it's not appropriate to... Indication from the court, not from the parties. Pardon? The parties address this, right? The parties conceded... I mean, the defendants in each case have contended that the California law claims are invalid and the Washington law claims are invalid. But there are differences in that each one is a question of whether the state insurance commission approves of this kind of a practice. And they haven't shown that there's similar facts with respect to the Washington insurance commissioner and the California insurance commissioner for the underlying violations. So there's not a showing that there's a similar violation under... I mean, the facts in both cases are similar. Their allegations that it's illegal are made both with respect to Washington and California. But there's no indication that the Washington insurance commissioner and the California insurance commissioner have the same view. I'm looking at the objection you filed below. And it's pretty thin in terms of trying to articulate why there's a difference between the California and Washington claims. It says they obviously vary in worth. Points out that the California one survived a motion to dismiss and the Washington one was never ruled on. But you didn't get into any kind of... You didn't make a showing about a substantive difference in the law. Well, again, it's their duty to walk through the elements of each claim. And it's the district court's duty in certifying a class and approving the settlement to walk through the elements of each claim. You know, I'm a class member whose claim may be worth three or four dollars in each of these cases. And the time that you'd expect a class member to put into trying to figure this stuff out is pretty pretty draconian. I mean, I think you wanted to save some time for. OK, thank you very much. Thank you. All right. We'll hear now again from Mr. Robb. Thank you, Your Honors. May it please the court. Stephen Robb again on behalf of plaintiffs' appellees. With respect to the argument that the district court's analysis was not sufficient, I do want to point out that not only was Mr. Isaacson's treatment of the adequacy issue, which is the only issue he raised in his objection with respect to the Rule 23 requirements, very thin in his written submission, but the court took it seriously. And that was actually the bulk of the time spent at the fairness hearing was on the adequacy issue. The court also then spent two pages in its opinion addressing that argument and going through the standards and why there was no fundamental conflict here. Why doesn't the Saucillo case allow us to reach that? I think I take that case to suggest that you had an objector that didn't raise it to the district court, but the point was that the error was in the final order and the opportunity to object to a final order is on appeal. Well, here, the findings were presented in preliminary approval and he absolutely could have objected to other issues. If we're talking about the adequacy issue, that was addressed in the final approval order and he certainly can object that that's not sufficient. We're not saying he's waived that. It's that he's never raised the other issues until now. So, he would have had to raise with respect to the predominance questions, which are under a stricter standard of review, we've been told. He would have had to look at the preliminary order, say, well, that's too thin. You have to do more on that. And I mean, I guess the concern is in terms of kind of reading the district court's mind. And of course, I understand the concerns on the other side as the district court's supposed to read the objector's mind. But the error that we've assigned in these past cases is to the final order. That's where the mistake is made. If there's a lack of rigorous analysis there when the district court is under an obligation to do so, that's the error. I think in the settlement context, the key focus is on whether the class is unified and whether the requirements of Rule 23 are supported in the record such that the court can then assess, did the district court take this seriously and ensure that these requirements were met? But in all the case after case after case, we've said Black Lives Matter, Chinese Daily News, in all of these cases, we've said you need to put it in the order. You need to do that analysis in writing on your own in the order. In the absence of any particular objection to the court's findings, I do not think that the court's analysis, both at the hearing reflected in the transcript and in both of its orders, the preliminary and the final, need to be sent back down for further clarity given what is in the record. Mr. Isakson only objected. When have we upheld? I mean, so there's Hanlon where we've said we've been able to look through the lack of analysis in the district court's order and review the record. But when have we since Hanlon endorsed that, been able to affirm even though the rigorous analysis was not on the face of the orders? Hanlon is the main case that we refer to for this point that if it is supported and there's no real serious issue, even raised on appeal, that any of these requirements were not satisfied. So the record supports it. It was not raised below. And even now, it is just a purely almost academic exercise. Well, predominance here is not. It's kind of a tricky question. And it involves some understanding of the allegations. It may be on just simply looking at the law here and there. There has to be some interrogation of the pleadings, the facts pled to try to understand for the district court to exercise its discretion in approving that, including finding that predominance has been met. Again, we have lots and lots of cases. The predominance is the sticky wicket here. Right. And I think the court's discussion of adequacy and its final approval order does address the predominance because it talks about the unity of all class members' claims and of the issues that they're all asserting the same claims based on the same practice and asserting that it's unlawful, unfair. Adequacy under the 23A analysis. In the settlement context where the court is looking for an overbroad class definition, which might include conflicts, the court did examine that. And I think in doing so, it satisfied the predominance inquiry as well by setting forth its findings as to why the class was unified and the commonality being the dominant factor. Do you know if we've ever allowed that to do that work? Again, I take our cases to be quite formal and saying, no, you need to do the predominance one because it's a different standard. No, I don't. I don't have a case sort of laying that out. As far as the redaction issue, it's the same issue that it is distinct from public access, whether class members needed this information. They did not. No one was really that interested in this information. Mr. Isaacson is the only one who mentioned redactions, and even he did not want to actually see them. He wants to pursue his First Amendment public access argument. All the inquiries we've had, thousands of inquiries, have been about the payment and when they can expect payment. No one has been interested in the aggregate financial information, which is the court's responsibility to look at to judge the fairness or reasonableness of the settlement comparing the potential total exposure to the settlement amount. Class members, for their decision making, need to decide whether to participate or opt out. The amount of assistance fees each class member paid and could potentially recover was highly individualized and complex. What's your response to his argument that essentially the sealing orders in this case conceal from the public the very illegality of the arrangement? I'm not sure I fully understand that argument. The case itself, everything alleged in the case, revealed these fees that people were not aware of. As far as the individual amounts, that is so highly individualized. These are millions and millions of sales where the amount varies. So there is no revealing of all amounts that people are paying. What is at stake is, was the amount charged? And that was very public. The amount of damages need to be calculated based on, it depends on the plan you purchased, the time you purchased it, how many you purchased, people were insured under that travel insurance. And the assistance fee would track all of that. So I don't think that it was possible to tell everybody what the assistance fee was in every circumstance because it varied so widely. Also, to determine how much you could stand to recover requires a calculation about the claims rate. The class members were provided very good information and the court said this is probably the best information that can be provided is the initial default calculation would be 75% of the assistance fees paid in a certain tranche or group of policies and 40% in the ones where there were the enhanced disclosures already rolled out. Now that could double if not enough people submitted claims to deplete the entire fund so that the fund would go to class members. And it got close to that amount so people will receive a multiple of what they actually paid in these fees. But laying that out for them and explaining this is how the calculation is going to work to me is the critical information that class members are interested in, not the total amount of fees defendants collected over a set period of time. There's no way to take that aggregate top line number and then make it meaningful to an individual. Are there any other questions about anything else? I think those were the two main issues that Mr. Isaacson argued here. All right. Okay. All right. Thank you, counsel. So we'll hear now from Ms. Ireland. Good morning. My name is Elizabeth Ireland, partner at Winston & Strawn, appearing on behalf of defendants, Applebee's, AJA Service Company, Jefferson Insurance Company, and BCS Insurance Company. May it please the court. My client's argument is that this appeal should be resolved on threshold jurisdictional grounds, as I think you know and as we've been referring to. But even if the court reaches the merits of the sealing order, the court's carefully reasoned order at the district level was well within its discretion and should not be disturbed. I'm going to shift a little bit from what I was planning to do and quickly note my answers to the questions that have been posed and then answer your question. I believe it was you, Judge Collins, about why we believe that this does not merge. And then I will highlight a couple points at the end about why this should stay sealed. So if I may, just as my colleague did before, I'd like to take your Honor's second question first because I agree that the answer to it informs the prior question. You asked whether the denial order may be reviewed on appeal from the final judgment. And our answer is no. And that's because of the key phrase from the Langer case about how this does not lead up to the judgment. And that gets to your merger question that you raised earlier. I'd like to talk to you about four reasons that I believe that this does not merge with the final approval order and so therefore should have been appealed earlier and is untimely. So first off, as we know, the district court addressed these two issues separately. The district court took the motion to unseal separately and issued an order related to that separate and apart from its final settlement order. Second off, I want to give you a hypothetical that shows why these orders are so different. So let's say Mr. Isaacson had succeeded at final approval and no class settlement was reached. So there was no final judgment at that point approving the settlement. Well, then my client's defendants could have reached out to plaintiffs and gotten into individual settlements to resolve this case. We could have taken a totally different approach here instead of a class action settlement. And what ultimately would have ended up is you would have the case dismissed voluntarily. And then at that point, what would Mr. Isaacson appeal? The voluntary dismissals? Would he be forcing the case to continue? That to me is just illogical. I mean, at what point... Because I understand his argument. It's that the conditions placed on my access to the information, namely the protective order, were unlawful. As a result of that, I did not have information to which I should have had access. And that information could have provided additional grounds for me to challenge the settlement. And therefore, if you find that the conditions were unlawful, it needs to go back, be vacated so that I can get the information and then bring a new motion to challenge the settlement. Why isn't that a perfectly valid merger argument? I mean, I think the word you use there is additional reasons to challenge the settlement. So he has independent reasons to challenge the settlement that have nothing... He's made arguments. His point is I could have made additional or stronger arguments if I had information to which I was lawfully entitled. Why isn't that a valid merger argument? I think because it's a separate argument, as counsel has been pointing out earlier. I mean, it may be veiled as a right to access on behalf of the class type of argument, but that's not what this argument really is. This argument is about his academic purposes in utilizing... Suppose we looked at the stuff that was sealed and we think, my goodness, look at that. That's something that raises a really big, fat issue. Then unsealing that information would reopen the whole issue of the potential approval of the settlement. I don't believe it would, Your Honors, because if you end up unsealing that information, there's still separate and distinct issues in the settlement approval that stand alone and stand apart. And I think it would also create a... I mean, the rejection of the five or six arguments he made doesn't mean that number seven wouldn't have carried the day and number seven was impaired by the sealing. Yes, but I think this could be better analogized to other cases where it doesn't merge. So I think, for example, in the Supreme Court case of Dupree, they talk about Ortiz and the notion that there, if you've got a motion for summary judgment just based on facts, that's not going to merge in the same way a motion for summary judgment based on legal issues will merge in. So I think this is more appropriately akin to that summary judgment for insufficiency of the evidence type scenario. Another scenario I think it's more akin to would be a discovery order that doesn't have any bearing on what the final judgment is. And I have a case to that end that I can direct you all to. I don't believe that it's in the record, but I would analogize to the case of United States Sorry, one moment. United States versus Higuera-Guerrero 518 F3rd 1022. It's a Ninth Circuit case from 2008 and it's about a discovery order in order to unseal documents and transcripts from prior proceedings and that it was treated as a collateral issue that needed to have been appealed earlier on. All right. Thank you, counsel. We've taken you over your time. All right. So we'll hear rebuttal now. Thank you, your honors. Wayside Church, the Sixth Circuit makes it very clear that you don't expect a lot of detail in a preliminary approval order. They're expected to be cursory. It's not error for it to be cursory. It's not something to object to that it's cursory. It basically says there's enough of a showing here that we'll give notice to the class and we'll come back to these issues and deal with them at final approval. The court did not apply the right standards at final approval. That was not something that I could have predicted. You didn't alert the court that you thought there was any issue about predominance. Well, it's something that, you know, needed to be focused. I think that it overlaps with the adequacy issue that I'm raising with respect to the differences between Washington and California law and to evaluate the differences between California and Washington law.  That's a different argument that the objection I preserved extends to this issue. But you're making a broader argument that said, even though I did not lay out these objections with respect to the preliminary order, even though they equally applied to the preliminary order, I now get to raise them for the first time on appeal because I didn't like the way the final order was written. They don't equally apply to the preliminary order. The preliminary order has one sentence on predominance, one conclusory sentence on predominance, and you didn't say anything about that, that, gee, you know, I think you need to say a little bit more about predominance. And then when you just got an affirmance in the final order, now you come and say, well, we need a different predominance analysis. There's no requirement that it include an extensive predominance analysis in the preliminary order. Well, and so, Saucio, I think is your best case here in terms of not having to raise it, but is the lack of rigorous analysis, which is something that the court itself has an obligation to do, an application of the wrong legal standard? So I take your underlying claim to be that the district court, had it done more of a predominance analysis according to what plaintiffs had proposed, still might not have been enough. But that's not the claim that's in front of us. The legal standard that you're pointing to is that the district court had to do a rigorous analysis of the predominance legal standard. Is that the kind of legal standard that Saucio tells us you're allowed to raise for the first time on appeal? It's non-waivable? I think the legal standard is imposed by a Supreme Court president that says there has to be a rigorous analysis of each element required for class certification. And Ninth Circuit president that says, yeah, there has to be rigorous analysis of each of those. Now, there does not have to be rigorous analysis in a preliminary approval order. That's just setting up the issues that are going to be rigorously analyzed later on as the district court's duty to do that rigorous analysis in connection with the final approval and class certification. So there wasn't a reason for me to object. You haven't done the things in a preliminary approval order that you're required to do in a final approval order and final class certification order. All right. All right. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted.
judges: COLLINS, JOHNSTONE, ALBA